ESTATE OF LARSON: UNITED STATES FIDELITY & GUARANTY COMPANY and another, Appellants, vs. LARSON, Respondent.

*October 8—November 8, 1940.*

The cause was submitted for the appellants on the briefs of *Lines, Spooner & Quarles* of Milwaukee, attorneys for the United States Fidelity & Guaranty Company, and *James Fornary* of Racine, attorney for Peder M. Pedersen, and *Maxwell H. Herriott* of Milwaukee of counsel, and for the respondent on the brief of *Nathan Levine* of Racine.

FOWLER, J. This is a proceeding in the county court against the defendant, as guardian of the plaintiff while a minor, to set aside a release to the guardian executed by the plaintiff on becoming of age and to require the defendant to account for the property received by him as guardian. The

court set aside the release and adjudged that the defendant pay to the plaintiff $464.88 as property received by him as guardian with six per cent interest thereon from the time of its receipt.

The property involved is a third interest in a North Chicago improvement bond. A preceding guardian of the plaintiff and his two minor brothers invested an inheritance of the minors from the estate of their mother in the bond. The preceding guardian received the inheritance in 1919. He died November 25, 1932. The bond was then in the physical possession of his attorneys, who became the attorneys of his executrix, and then the attorneys of the defendant guardian, and has remained in the possession of these attorneys ever since. The account of the executrix of the preceding guardian dated January 20, 1933, states the property due the ward as "Balance, $464.88. Share in that amount in Bond No. 22 [describing it] payable October 2, 1932," on which the account states no interest was collected in 1932. The defendant guardian's receipt to the executrix of the preceding guardian dated March 28, 1933, acknowledges receipt of this bond "out of which bond $464.88 is due the ward." The defendant guardian's inventory describes the ward's property in his possession as this bond, "the actual possession of which bond is in Emma Larson, widow of Louis Larson, deceased, and which proceeds will be paid over by her to the" defendant upon receipt of payment or prior sale. Nothing has ever been collected on this bond by the defendant guardian, and it is now and ever since he receipted for it has been practically worthless.

The plaintiff became of age September 15, 1935. As of February 27, 1936, he executed a release to the defendant as guardian. It acknowledged the receipt from the defendant of $464.88 "and of all property held by him [the guardian] for me [ward] or in my [ward's] behalf, in full payment and satisfaction for all money or property due me [ward] from

my said guardian," and by its terms released the guardian and his bondsman "from all further liability to me [ward] on account of said guardianship."

At the time the plaintiff executed this release he was fully aware, as he repeatedly admitted in his testimony on the trial, that all the property that the defendant ever actually received for him was his one-third interest in this bond, that no interest had been paid on it in 1932 or since, and that the bond became due in 1932 and was wholly unpaid.

The plaintiff himself had been paying the annual premium on a surety bond furnished by the defendant as guardian ever since the defendant was appointed guardian. Prior to his execution of the release the plaintiff had received from one of the attorneys of the guardian the release which he subsequently signed with a letter dated February 25, 1936, stating that "In order to save another surety-bond premium and in view of the fact that you have now attained your majority I inclose herewith for your signature a release of Mr. Pedersen as your guardian." The letter further stated that the bond was "in the possession of the executrix of the estate of your deceased brother, but when that estate is closed, and if anything comes from the proceeds of this bond, it will be turned over to you." The bond, as above stated, was actually in the possession of the attorneys of the defendant, who were also the attorneys for the executrix of the plaintiff's deceased brother. In reply to this letter the plaintiff sent from New York city, where he then was, to the attorney of the guardian who wrote the letter, the following:

"I have received your letter with the inclosed guardianship paper. I refuse to sign this paper before I receive that which I am entitled to from my parents. You as my lawyer have never yet let me know anything about this case which you promised to look into. You have not let me know whether or not the bonds were purchased at the death of my parents or purchased later. My deceased uncle once said that he had put

the money in a mortgage at a fixed rate of interest and therefore it is important to me that you find out about these things.

"You mentioned in your letter that if anythings comes from the proceeds of this bond, it will be turned over to me. I certainly think I am entitled to this as I received it from my parents. Neither I nor my uncle Peder M. Pedersen have anything to show in regard to my guardianship. I feel that when I had reached my majority six months ago, I was entitled to my inheritance. If you are no longer interested in my case, please notify me at once and I will act accordingly."

Without waiting for a reply to this letter, which was not answered by the attorney until July 24th, the plaintiff on March 18, 1936, which date is fixed by the notary's certificate of acknowledgment attached to the bond, executed the release which the court vacated. Had the plaintiff not signed the release we would have a situation in which the defendant might perhaps have been properly required to account, although that case is not before us and we are not assuming to decide it. But he signed the release with full knowledge of the facts regarding the property held for him by the defendant and with ample time to consider whether he would stand on his refusal to sign the release or execute it.

The court held in his conclusion of law (3) which is manifestly a combination of a finding of fact and a conclusion of law, that the release "was not a final release and discharge of said guardian, but was executed solely for the purpose of terminating further expenses for premiums on the guardian's bond, on advice of the attorney for the guardian, without being fully advised as to the effects of his acts in so doing."

The plaintiff is apparently an intelligent person, and was fully capable when he sent his letter, above quoted, of understanding the English language. The contents of the letter establish that. The language of the release is plain, and by its own terms refutes the idea that it was executed solely for the purpose of terminating further expense of premiums on the

bond. It shows that it was executed for the purpose of releasing the defendant from all obligations to the plaintiff as guardian. Avoidance of further premium was only a motive, not a purpose. The only thing in the nature of advice that the attorney for the guardian gave him is contained in the letter and the letter speaks for itself. There is no evidence whatever that the plaintiff was not fully advised, or that he did not know of the effect of his signing of the release. No fraud or misrepresentation or mistake is alleged as ground for rescission of the release. The letter requesting his execution of it informs him just what, if anything, he will eventually receive as the avails of his portion of his mother's estate and just when, if ever, he will receive it.

The trial judge made certain other findings which he may have considered as justifying his action in setting aside the release. He found that the defendant Pedersen never reduced the bond to possession, but it was in the possession of his attorney, and the attorney's possession was the possession of the guardian, and as much his possession as the possession of the other persons having the remaining two-thirds interest in it. He found that the guardian never collected the bond, which the plaintiff well knew, but did not find that it was collectible or of any more than nominal value when or after the defendant receipted for it. He found that the defendant failed and neglected to collect the amount due from the estate of the predecessor guardian, but did not find that the estate was solvent, or that any sum could have been collected from said estate if a claim had been filed against it. None of these facts, if supported by the evidence, would warrant rescission of the release in view of the admitted knowledge of the plaintiff when he executed it, even if it would have supported a claim against the guardian had the release not been executed.

*By the Court.*—The judgment of the county court is reversed, and the cause remanded to the county court with direction to dismiss the petition on the merits.